# Sampson v. Jackson.

## Statutory Claim Suit.

1. *Assignment for benefit of creditors; who may attack it.*—An assignment by a debtor of all of his property, by which he prefers certain of his creditors, is valid and binding as between the debtor and his assignee, and in the absence of objection by other creditors, will be executed according to its terms; only the creditors not named in the assignment, or those who dissented from it, having the right to attack it, and demand that it shall enure to the benefit of all the creditors of the debtor alike.

2. *Same; interest of assignee.*—An assignee under a general assignment holds the property assigned for the exclusive benefit of the beneficiaries named therein, but is in no sense a representative of the creditors further than to faithfully execute the trust conferred on him according to the terms of the instrument by which he was appointed; nor can he complain of the terms of the assignment, because he may think them unfair.

3. *Same; assignee can not interpose a claim to property conveyed just before execution of assignment.*—In an action on a note, which was indorsed to plaintiff by an insolvent debtor only a short time before the making by him of a general assignment, the assignee named in said deed of assignment can not, as the representative of the creditors of his assignor, interpose a claim to the note sued on; since only a cred-

itor of the assignor could question plaintiff's title to said note, derived from such indorsement, or seek to have it declared a part of the general assignment.

APPEAL from the Circuit Court of Colbert.

Tried before the Hon. H. C. SPEAKE.

On July 14th, 1893, A. W. Jackson brought an action in a justice of the peace court against Mrs. Ella T. Newsom, which was founded upon a promissory note, executed by the defendant to one Hinton E. Carr, on June 2, 1893, and payable 30 days after date. The defendant in answer to the summons in said cause, paid into court the money due upon said note, and suggested that James N. Sampson, the assignee of the Tuscumbia Banking Company, claimed the money due upon said note; and prayed that said Sampson be required to make himself a party to the said suit, and to defend the same. Summons was regularly served upon the said Sampson, who interposed his claim, and upon the hearing of the cause the justice of the peace rendered judgment for the plaintiff, and from said judgment an appeal was taken to the circuit court. In the circuit court the said James N. Sampson filed his claim to said money, averring therein that on June 10th, 1893, the Tuscumbia Banking Company made a general assignment of all of its property to him, James N. Sampson, for the benefit of all of its creditors, and among other property assigned to him was the note due from Ella T. Newsom, and that he claims the said money as such assignee.

In response to this claim, the plaintiff replied that the Tuscumbia Banking Company, being indebted to her, transferred said note in settlement of said indebtedness, and that the general assignment to said James N. Sampson was made after such transfer, and that the assignee can not set up any right or claim to said note, except such as could have been interposed by the Tuscumbia Banking Company.

The evidence introduced in behalf of the plaintiff, as is shown by the bill of exceptions, tended to show that before June 10th, 1893, the Tuscumbia Banking Company, a partnership composed of Hinton E. Carr and his wife, Emma Carr, did a general banking business in the city of Tuscumbia, and that the plaintiff was a depositor therein to the amount of several hundred dollars. That on June 8th, 1893, James Jackson, as agent of

the plaintiff, went to the Tuscumbia Banking Company's place of business, for the purpose of drawing out from said bank, for the plaintiff, the amount she had on deposit; that one Harrington, the assistant cashier, was in charge of the bank, and told said James Jackson that he did not have the money to pay to him that morning; that thereupon the said Jackson said that he would accept notes or other security as collateral for said debt; that at the time of this request, Hinton E. Carr, who was president and had control of the business of the Tuscumbia Banking Company, was in the city of New York. On his departure, the said Harrington was left in entire control of the business, and instructed by said Hinton E. Carr, that, in the event he, Harrington, was in doubt as to what to do or how to act in any matter connected with the said business, to consult with said Carr's brother, Dent Carr, and whatever he said do would be all right, and he could go ahead and do it. That these instructions having been received from Hinton E. Carr, Harrington, before delivering the securities to said Jackson, told Jackson to wait until he consulted with Dent Carr. After such consultation Harrington delivered to said Jackson certain notes belonging to the Tuscumbia Banking Company, among which was the note executed by Mrs. Ella T. Newson, now sued upon. The receipt given by Jackson upon the delivery of these notes, shows that they were not in payment of the indebtedness, but were received as collateral security for the debt of the bank to the plaintiff. Two days after this, James Jackson carried the said notes to Mrs. Emma Carr, a partner in the Tuscumbia banking business, and she endorsed them to the plaintiff, as transferred by the Tuscumbia Banking Company. A few minutes after this endorsement, Mrs. Emma Carr executed a deed of general assignment to James N. Sampson of the property of the Tuscumbia Banking Company, for the benefit of its creditors. This deed of general assignment was written by the said James Jackson, who testified that at the time of the endorsement of the notes to the plaintiff by Mrs. Carr, he knew of the intended assignment, which was executed a few moments afterwards.

James N. Sampson testified in his own behalf, that the Tuscumbia Banking Company was insolvent six months before it closed its doors, June 10th, 1892, and that a

few days after the assignment Hinton E. Carr, who had returned from New York, turned over to him, the said Sampson, as assignee, the assets of the banking company, and also the list of notes said Harrington had delivered to said James Jackson for the plaintiff, A. W. Jackson, and in the list of notes so delivered to him was the note now sued upon.

The cause was tried by the court, without the intervention of a jury, and upon the hearing of all the evidence judgment was rendered for the plaintiff, declaring that she was entitled to the money which had been paid into court, and that the said James N. Sampson was not entitled thereto. This judgment is appealed from, and the same is here assigned as error.

J. B. MOORE, for appellant.—1. The transfer of the note, the amount of which was paid into the court, and is the subject matter of this suit, was a part of the general assignment, made not five minutes thereafter. Both are parts of the same instrument, and appellant, being the assignee of all the creditors, is clearly entitled to the money in controversy, to be distributed equally among them.—*Holt v. Bancroft*, 30 Ala. 193; *Danner v. Brewer*, 69 Ala. 191; *Perry Ins. & Trust Co. v. Foster*, 58 Ala. 502; 3 Brick. Dig., 50, §§ 20, 21.

2. Notice to the agent is notice to the principal, whether the notice is actual or implied. And when appellee acquired the note through her agent, she knew as well as did Emma Carr, one of the partners, that within five minutes thereafter, Emma Carr would execute a general assignment. Appellee's agent helped prepare it. As to notice to agent being notice to his principal, see *Pepper v. George*, 51 Ala. 190; *Hinton v. Cit. Mut. Ins. Co.*, 63 Ala. 488; *Reid v. Bank of Mobile*, 70 Ala. 199.

THOMAS R. ROULHAC and WILLIAM H. SAWTELLE, *contra*.—Sampson, as assignee of the Tuscumbia Banking Company, under a general assignment for the benefit of creditors, has no rights in a suit of this character. He can not raise the question of the validity of the assignment of said notes; he succeds only to the rights of the assignor, and is bound and effected by all the equities, and subject to all the defenses, which would have affected the assignor, the Tuscumbia Banking Company, or

[Sampson v. Jackson.]

rather the individual parties composing said firm. In no just sense is he a purchaser for value, or the representative of creditors.—*Hatchett v. Blanton*, 72 Ala. 423; *Granger's L. Ins. Co. v. Kamper*, 73 Ala. 325 ; Burrill on Assignments, 538 ; *Walker v. Miller*, 11 Ala. 1067 ; *Chamberlain v. Bromberg*, 83 Ala. 576 ; *Shealy v. Edwards*, 75 Ala. 411 ; *Strange v. Graham*, 56 Ala. 620 ; 2 Brick. Dig., 16, § 45.

HARALSON, J.—1. It will be remembered that a general assignment by an insolvent debtor is not prohibited— is not declared void by the statute. Its only effect is in its operation. The statute was designed, merely, to deprive such assignments of the character of a particular security for a particular debt, converting it into a general security for the equal benefit of all creditors who come in and claim under it. And, as we have heretofore held, an assignment of all of a debtor's property, by which preferences among his creditors is made, is perfectly good, as between the debtor and his transferees or assignees, and will be allowed, in the absence of objection by creditors, to be executed according to its terms. Creditors not named in it, or those who have not assented to it, alone, have the right to claim that it shall enure to the benefit of all the creditors.—3 Brick. Dig., 49, § 16 ; *Rapier v. Gulf City Paper Co.*, 64 Ala. 342.

2. The assignee under a general assignment, whether preferences are established in it or not, if he accepts the trust, takes the property under the deed and holds it for the exclusive benefit of those mentioned in it as its beneficiaries. And, as it was said by us in another case, "he is bound and affected by all the equities, and subject to all the defenses which would have affected the assignor. In no just sense is he a purchaser for value, or the representative of the creditors." He is certainly not their representative, further than to faithfully execute the trust conferred on him, according to the terms of the instrument by which he was appointed, and pay the proceeds of the property to those provided for. He has no right to find fault with the assignment because he thinks it unfair, or gives preferences, or does not distribute the property, as he would have done.—*Rapier's Case, supra; Davis v. Swanson*, 54 Ala. 277 ; *Granger's Life & Health Ins. Co. Kamper*, 73 Ala. 346 ; *Walker v. Miller*, 11 Ala.

[Sampson v. Jackson.]

1067; *Hatchett v. Blanton*, 72 Ala. 434; Burrell on Assignments, 621, § 391.

3. The question at issue, under the facts of the case, finds solution in the foregoing principles. It is disputed that the cashier of the Banking Company, Mr. Harrington, had the capacity, under the general authority which attached to his office, or under any special authority conferred on him, to transfer the assets of the bank to plaintiff or to any one else, as collateral security for a debt of the bank. Without reference to any such authority, it is not denied that the Banking Company, after the note in question had been delivered to the plaintiff's agent, and before the general assignment was executed and delivered, indorsed the same to the plaintiff, and thereby cured what defect there was in the previous transfer, if any, so that, the legal title to the note was transferred to, and was in, the plaintiff, which entitled her to maintain this action. The only person or persons who could question plaintiff's right to said note, by questioning the validity of her title as acquired to it, or by seeking to have the assignment of it to her declared a part of the general assignment, must be a creditor or creditors of the insolvent assignor, and not the assignee in the deed of assignment, who, as to this action, stood in the place of the assignor and did not represent the creditors. If none of them complained, the plaintiff should meet no legal impediment in proceeding to collect said note under her assignment of it to her; and the claimant, as assignee in said deed, went beyond the limits of his authority under said deed, to put himself forward as the representative of the creditors, to do what we have no reason to believe they desired to do for themselves. They may have good reasons for not litigating with plaintiff, with which claimant should not seek to interfere.—*Rapier v. Gulf City Paper Co., supra.*

It may be added, just here, that trusts arising under general assignments for the benefit of creditors, are peculiarly the objects of equity jurisdiction.—2 Story Eq. Juris., § 1067; 2 Perry on Trusts, § 594; *McFerran v. Davis*, 70 Ga. 661; *Anniston Carriage Works v. Ward*, 101 Ala. 670.

It is manifest, the appellant mistook his rights and duties, in instituting this claim, and that in the finding and judgment of the court, there is no error of which he can complain.

Affirmed.